**Reginald NIXON, Appellant**

v.

**The STATE of Texas**

**NOS. PD–0851–14 & PD–0852–14**

Court of Criminal Appeals of Texas.

DELIVERED: February 24, 2016

John Bennett, Amarillo, for Appellant.

John E. Meskunas, Assistant Criminal District Attorney, Fort Worth, Lisa C. McMinn, State's Attorney, Austin, for the State.

### OPINION

KEASLER, J., delivered the opinion of the Court, in which MEYERS, JOHNSON, HERVEY, RICHARDSON, and NEWELL, JJ., joined.

At Reginald Nixon's trial, the jury returned punishment verdicts of seven years' and nine years' confinement for two charged offenses to run consecutively. The judge instructed the jury that, by law, the sentences would be served concurrently. After additional deliberations, the jury returned verdicts of sixteen years' confinement for each charge. According to statute, however, the judge was required to accept the original verdicts and reform them in accordance with the law. We therefore must reverse the court of appeals' judgments and reform the trial court's judgments to reflect the original verdicts to be served concurrently.

### I. Background

Nixon was charged in separate indictments with the offenses of burglary of a habitation and evading arrest or detention with a vehicle. The indictments were consolidated and tried before a jury. Nixon pleaded guilty to both indictments and pleaded true to each indictment's enhancement provisions. At the conclusion of evidence, the judge instructed the jury to find Nixon guilty of the alleged offenses and find the enhancement provisions true. The jury was further instructed to assess punishment in each cause and was given the applicable range of punishment for each offense.

During its initial deliberations the jury sent a note to the judge that asked, "Do the sentences run concurrently or sequential[ly]? I.e.: is the minimum 5 or 7? Clarification: 2 terms and 2 possible fines?" The judge responded only that the jury was to continue deliberating. The jury returned verdicts of seven years and no fine for the burglary charge and nine years and no fine for the evading arrest or detention charge. However, on each verdict form there was an asterisk next to the term of years imposed that referred to a handwritten notation at the bottom of the verdict. Each notation stated, "To be

served consecutively with [the other charge] not concurrently."

The judge read the verdicts aloud, but upon noticing the handwritten note, the judge called the parties to the bench. The judge recessed the jury and asked both sides their positions on the verdicts. The State argued that the verdicts should not be received because the verdicts were premised on the sentences running consecutively and the law did not permit the jury to make such a decision. Nixon, however, urged the judge to accept the verdicts but strike the handwritten portion or grant a mistrial. Nixon contended that the note was merely advisory and that the judge need not follow it. The judge overruled Nixon's objections and denied his motion for mistrial. The judge did not receive the verdicts, but instead issued an additional instruction and sent the jurors to deliberate further. The jury was instructed as follows:

> You are further instructed that the Court cannot accept and receive your verdicts as stated. You are instructed that the sentences in both causes must be served concurrently by operation of law. You are instructed to read and consider this additional instruction with the remainder of the Court's charge and consider the charge as a whole. Please continue your deliberations.

Soon thereafter, the jury returned verdicts assessing punishment at sixteen years' confinement and no fine for both offenses. Nixon was sentenced accordingly.

Nixon contested his sentences on appeal and reasserted his objections at trial.[1] He argued that the judge erred in failing to accept and reform the jury's original verdicts. Nixon did not challenge the propriety of the judge's additional jury instruction. The court of appeals held that Texas Code of Criminal Procedure Article 37.10(b) did not require the judge to accept and reform the original verdicts and affirmed the trial court's judgments.[2] The court reasoned that while the judge may have had the authority to reform the verdict under Article 37.10, he also had the authority to refuse the verdict and return the jury to their deliberations pursuant to this Court's opinion in *Muniz v. State.*[3]

We granted Nixon's petition for discretionary review to review the court of appeals' application of Article 37.10 and to resolve incongruities, if any, between Article 37.10(b) and *Muniz.*

## II. Analysis

### A. Article 37.10

Before Article 37.10(b)'s enactment, a jury verdict containing an unauthorized punishment rendered the entire verdict void.[4] For instance, the court of appeals in *Bogany v. State* attempted to reform the jury's punishment verdict by omitting the fine it included because the Penal Code did not allow a fine for the particular offense.[5] This Court noted that the controlling law at the time did not authorize an appellate court to reform an unauthorized verdict.[6] And because the court of appeals was without authority to reform

1. *Nixon v. State,* Nos. 07–13–00389–CR & 07–13–00390–CR, 2014 WL 2553372, at *1 (Tex. App.–Amarillo Jun. 4, 2014) (mem. op., not designated for publication).

2. *Id.*

3. *Id.* at *2 (relying on *Muniz v. State,* 573 S.W.2d 792 (Tex.Crim.App.1978)).

4. *Bogany v. State,* 661 S.W.2d 957, 959 (Tex. Crim.App.1983).

5. *Id.* at 958.

6. *Id.* at 959.

the unauthorized verdict, the verdict was "void at its inception" and must be set aside.[7] Therefore, reversing the trial court's judgments and remanding the cause was necessary.[8]

Before 1985, the first paragraph of Texas Code of Criminal Procedure Article 37.10, now Article 37.10(a), stated:

> Art. 37.10. Informal verdict
>
> If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal; in that case, the judgment shall be rendered accordingly, discharging the defendant.[9]

But in 1985, the statute was amended to include Article 37.10(b):

> If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law.[10]

Article 37.10(b)'s inclusion seemingly responded to the predicament the *Bogany* Court encountered. It gave the trial and appellate courts the authority to reform a verdict containing an unauthorized punishment, an infirmity that previously rendered the verdict void.[11]

Article 37.10(b)'s enactment created a legislative mandate to trial and appellate courts in addressing partially unauthorized verdicts. Article 37.10(b)'s language indicates that the Legislature intended courts to treat partially unauthorized verdicts differently from informal verdicts. Section (a) grants a trial judge the discretion to accept an informal verdict and, with the jury's consent, put it into proper form. Only if the jury refuses the alteration must a trial judge retire the jury for further deliberations. Section (b), however, speaks only to jury punishment verdicts containing an unauthorized punishment provision. And in the event of a partially authorized verdict, a trial judge has no choice but to reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law. By enacting Article 37.10(b), the Legislature intended a significant distinction between informal and partially unauthorized verdicts. To conclude otherwise would run counter to the established statutory-construction presumption that the Legislature intends that the entire statute be effective and does not intend a useless action.[12]

## B. Informal or Unauthorized?

This matter's resolution turns on whether the jury's verdict was informal or was at once both authorized and unauthorized. If the jury's verdict was informal, section (a) applies; if partially unauthorized, sec-

7. *Id.*

8. *Id.*

9. Tex. Code. Crim. Proc. art. 37.10(a) (Vernon 1979 & West 2006).

10. Acts 1985, 69th Leg., ch. 442, § 1 (effective June 11, 1985); Tex. Code Crim. Proc. art. 37.10(b) (West 2006).

11. *Ex parte Youngblood,* 698 S.W.2d 671, 672 (Tex.Crim.App.1985); *Ex parte Johnson,* 697 S.W.2d 605, 607 (Tex.Crim.App.1985).

12. *Garza v. State,* 213 S.W.3d 338, 349 (Tex. Crim.App.2007).

tion (b) controls. Nixon takes the view that, unlike the terms of confinement, the jury's verdict notation that the sentences were to run consecutively is unauthorized, and section (b) required the judge to accept the original verdicts and to omit the cumulation language.

The State, on the other hand, maintains that the jury's verdict did not contain unauthorized "punishment" because cumulation is not considered punishment. Unauthorized punishment, the State argues, is punishment that falls outside the applicable range of punishment defined by Penal Code §§ 12.21 through 12.35. Because cumulative sentencing is permitted under Penal Code § 3.03, not by the statutes defining ranges of punishment, the State maintains that cumulating sentences should not be considered punishment. Therefore, the State asserts, the judge had the discretion to either accept and reform the verdict or reject the verdict and send the jury back for further deliberation.

We are unpersuaded by the State's argument that cumulation is not true "punishment" because it does not appear in the Penal Code's section defining punishment. If we were to accept the logic of this argument, any addition made by a jury on a punishment verdict form—whether purporting to cumulate terms of confinement, impose specific community supervision conditions, dictate a condition of incarceration, or something equally distant from the jury's province—would necessarily render the verdict "informal." But this result does not correspond with the term's common usage or how we have defined the term "informal" in the past.

Black's Law Dictionary defines "informal" as "not done or performed in accordance with normal forms or procedures." [13] This is a fair definition of the word and one readily understood by any reader of Article 37.10(a). It further accords with this Court's reading of the term. In *Jennings v. State*, we were asked whether a verdict form was considered a part of the jury instructions.[14] Although *Jennings* did not attempt to answer the question we do today, our opinion provides insight into the term "informal verdict." In the absence of a statutory requirement for including a jury-verdict form as a part of the court's charge, this Court historically was ambivalent over their use.[15] Acknowledging Article 37.10(a) as a vestige of a time when verdict forms were not used with regularity, we noted, "In fact, Article 37.10 expressly acknowledges the possibility of an 'informal verdict'—one that does not meet the legal requirements of being written or answered as authorized—and sets out the method to repair its 'informality.'"[16] This is consistent with the historical understanding of the statute's language, which remains nearly verbatim dating back to the Old Code.[17]

*Reese v. State* provides a more recent example of Article 37.10(a)'s interpretation.[18] There, the jury left the verdict form blank for one of the charged offenses.[19] The judge informed the jury of the omission and instructed it to continue

13. BLACK'S LAW DICTIONARY 898 (10th ed.2014).

14. 302 S.W.3d 306, 307 (Tex.Crim.App.2010).

15. *Id.* at 309 & n. 13.

16. *Id.* at 309.

17. *See, e.g., Murphree v. State*, 55 Tex.Crim. 316, 115 S.W. 1189, 1190 (Tex.Crim.App. 1908); *Slaughter v. State*, 24 Tex. 410, 412–13 (1859).

18. *Reese v. State*, 773 S.W.2d 314 (Tex.Crim. App.1989)

19. *Id.* at 316.

deliberating.[20] After the jury returned a second time, the jury's verdict found Reese guilty of the previously omitted verdict, but also found him not guilty of a lesser-included offense. Once more, the judge instructed the jury to reconsider the lesser-included offense. Finally, the jury returned guilty verdicts on all submitted offenses and their lesser-included offenses.[21] We held that the judge should not receive an incomplete or unresponsive verdict.[22] We further noted that, "It is not only within the power, but it is the duty of the trial judge, to reject an informal or insufficient verdict, call to the attention of the jury the informality or insufficiency, and have the same corrected with their consent, or send them out again to consider their verdict."[23] The *Reese* Court held that the judge properly directed the jury to continue to deliberate because (1) the first time the jury returned from deliberations it returned no verdict at all on one of the charged offenses, and (2) the judge found the jury's verdicts to be in conflict and insufficient when it returned the second time.[24]

Like in *Reese*, omissions rendered the jury's punishment verdict informal in *Muniz v. State*.[25] Despite announcing that it had reached a verdict, the jury in *Muniz* left the statutorily required future-dangerousness question unanswered.[26] The judge sent the jury back for further delib-

erations with the instruction to "continue your deliberations in this case, to see if you can arrive at an answer to Special Issue Number II."[27] We rejected Muniz's argument that the verdict was an informal acquittal under then Article 37.10, now Article 37.10(a).[28] We held that this provision permits a judge "to put a verdict in the proper form when the jury fails to do so."[29] There, we held that the jury's verdict was "merely incomplete." We further held that, "The court can instruct a jury to retire to reconsider the verdict if it does not comply with the charge, the indictment, or the punishment allowed by the applicable statute."[30] As instructive as *Muniz* is, it has caused some confusion, especially in light of Article 37.10(b)'s enactment.

It is *Muniz*'s last phrase—"the punishment allowed by the applicable statute"—that, in the court of appeals' opinion, prevented it from finding fault in the trial judge's failure to accept the original verdicts and reform them.[31] However, we find *Muniz* inapplicable to this case for the following reasons. First, Article 37.10(b) did not exist when *Muniz* was decided. So when *Muniz* included the phrase "punishment allowed by the applicable statute," the Court was not contemplating a distinction between sections (a) and (b).[32] Second, the verdict in *Muniz* was incomplete; the jury failed to answer a question put to

---

20. *Id.*

21. *Id.*

22. *Id.* at 317.

23. *Id.*

24. *Id.* at 318.

25. *Muniz*, 573 S.W.2d at 792.

26. *Id.* at 793.

27. *Id.*

28. TEX. CODE CRIM. PROC. art. 37.10(a) ("If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal....") (West 2006).

29. *Muniz*, 573 S.W.2d at 794.

30. *Id.*

31. *Nixon*, 2014 WL 2553372, at *1–2.

32. *Id.*

it. As such, the verdict initially returned was an informal one even in light of yet-to-be-enacted Article 37.10(b).[33] *Muniz* presented both distinguishable facts and controlling law; it does not conflict with Article 37.10(b), and its holding applies only to informal verdicts. Article 37.10(b)'s enactment created new mandatory procedures in dealing with an unauthorized verdict. Unlike *Muniz*, the verdicts here were complete and decided the two discrete punishment questions in each case: the terms of confinement and whether a fine should be assessed. Furthermore, the original verdicts were neither ambiguous nor conditional in that the trial judge could not discern the jury's true intent. Rather, the jury's verdicts were quite definitive in both assessing no fines and terms of confinement. There was nothing in the jury's punishment verdict that could be considered conditional; there are no "if, then" propositions or dependent clauses in its verdict. It is also readily apparent that the jury intended to control how the assessed terms of confinement were to be served. However, the jury was powerless to do so.[34]

The verdicts Nixon's jury returned contain both authorized and unauthorized punishment. In *Ex parte Johnson*, this Court addressed a jury verdict that assessed punishment at fifty years' confinement and a $10,000 fine that exceeded the monetary amount permitted under the applicable law.[35] We held that the imposition of a $10,000 fine for aggravated robbery

exceeded the $5,000 maximum fine under the applicable range of punishment.[36] After holding that the fifty-year term of confinement was authorized, but the $10,000 fine was not, we applied newly enacted Article 37.10(b), and reformed the verdict by deleting the $10,000 fine.[37]

The San Antonio Court of Appeals' opinion in *Woodard v. State*[38] is persuasive because it presented a factually similar punishment verdict to those initially returned by Nixon's jury. The court was confronted with an unauthorized verdict when the jury's verdict assessed punishment of fifteen years incarceration, but also included a written stipulation that Woodard enter drug rehabilitation as part of his sentence.[39] Concluding that the jury verdict contained some punishment within the law and some without, the court held that Article 37.10(b) required the judge to reform the verdict and omit the punishment not authorized by law.[40] The court held that the trial judge correctly omitted the drug-rehabilitation stipulation because it was clearly unauthorized.[41]

In this case, the jury's original punishment verdicts were also neither contradictory nor incomplete. The jurors answered all the questions asked of them. The jury's imposition of seven years and no fine for the burglary charge and nine years and no fine for the evading arrest or detention charge was authorized because these terms were within the applicable

33. *See Muniz,* 573 S.W.2d at 794.

34. *See Beedy v. State,* 250 S.W.3d 107, 110 (Tex.Crim.App.2008) (explaining trial judges' discretionary power to cumulate punishments). *See also* TEX. PENAL CODE § 3.03(a) (West 2006).

35. *Ex parte Johnson,* 697 S.W.2d at 607–08.

36. *Id.* at 606.

37. *Id.* at 607–08.

38. *Woodard v. State,* 898 S.W.2d 4 (Tex.App.–San Antonio 1995, pet. ref'd).

39. *Id.* at 5.

40. *Id.* at 6.

41. *Id.*

punishment range for both offenses.[42] However, the jury's attempt to stack the terms was unauthorized because "the Legislature has assigned the task of cumulating sentences exclusively to the trial judge." [43] In fact, the judge also could not order the two terms of confinement to run consecutively. Although the dissent suggests cumulation is "in the nature of an unavoidable administrative determination," [44] this case presented no opportunity to determine how the terms would run because Penal Code § 3.03(a) required concurrent sentencing.

Because the jury's handwritten additions to the verdict form were clearly intended to control how the nine-and seven-year terms of confinement were to be served—in essence, ensuring Nixon would be incarcerated for sixteen years—the jury intended that the cumulation serve a punitive purpose, and those additions should be considered punishment for purposes of this statute. After all, the unauthorized features of the jury's verdicts are found in its punishment verdicts—the result of the jury's "normative, discretionary function" in assessing how Nixon should be punished.[45] Although the terms of confinement were authorized punishments, the attempted cumulation was punishment unauthorized by law. Article 37.10(b)'s

plain language is clear that, when the jury assesses punishment and returns a verdict assessing punishment that is both authorized and unauthorized by law, "the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law." [46] Accordingly, we hold that the judge erred in failing to accept the initial punishment verdicts and omit the jury's unauthorized attempt to stack the terms of confinement.

## III. Conclusion

We note the varying courts of appeals' positions in determining what portion of a punishment verdict is unauthorized and how to remedy it by omission.[47] Unlike most of those cases, the verdicts here do not present those that, if entered and incorporated into judgments, would result in illegal sentences. We reserve that discussion for the proper case. We further note that the jury's original verdicts demonstrate their intent to require Nixon to serve a total of sixteen years' confinement on both charges. However, Article 37.10(b)'s plain language compels us to conclude that the court of appeals erred in affirming the trial court's judgments because it explicitly requires the original verdicts' acceptance and reformation. We must do so no matter how desirable the

---

**42.** *See* Tex. Penal Code §§ 3.03(a), 12.42(a-b), 38.04(b)(2)(A), 30.02(c)(2) (West 2006).

**43.** *Beedy*, 250 S.W.3d at 110. *See* Tex. Penal Code § 3.03(a).

**44.** *Post*, at 573–74 (Yeary, J., dissenting).

**45.** *See Barrow v. State*, 207 S.W.3d 377, 379–80 (Tex.Crim.App.2006) (holding that judge-imposed cumulation does not offend the Sixth Amendment, and further noting that where within the statutory range punishment should be assessed and whether to cumulate the sentences imposed is a "normative, discretionary

function that does not turn on discrete findings of fact.")

**46.** Tex. Code Crim. Proc. art. 37.10(b).

**47.** *Compare Russell v. State*, 727 S.W.2d 92 (Tex.App.–Dallas 1987, pet. ref'd) (omitting the entire fine when the jury also assessed non-probated confinement term), *and Bennett v. State*, 723 S.W.2d 359 (Tex.App.–Fort Worth 1987, no pet.) (same), *with Vance v. State*, 970 S.W.2d 130 (Tex.App.–Dallas 1998, no pet.) (reducing jail time to statutory maximum), *and Howard v. State*, 766 S.W.2d 907 (Tex.App.–Fort Worth 1989, no pet.) (reducing fine to statutory maximum).

results of a contrary interpretation may be.[48] Because the judge was required to reform the verdict under Article 37.10(b) but failed to do so, it now becomes our duty to reform it.[49]

Accordingly, we reverse the court of appeals' judgment and reform the trial court's judgments to reflect the original punishment verdicts of seven years' confinement and no fine for the burglary offense and nine years' confinement and no fine for the evading arrest or detention offense.[50] These sentences shall be served concurrently.[51]

ALCALA, J., filed a dissenting opinion.

YEARY, J., filed a dissenting opinion, in which KELLER, P.J., joined.

ALCALA, J., filed a dissenting opinion.

When must a trial judge refuse to accept a jury's verdict and order it to continue deliberating until it reaches another verdict? I conclude that a trial judge must refuse to accept a jury's verdict when it contains ambiguity that rises to the level that the jury's intent cannot be fairly discerned by the trial court. Under those circumstances, a trial court should proceed under Article 37.10(a) of the Code of Criminal Procedure, which requires a judge to inform the jury about its failure to comply with the formal requirements for a verdict and to reduce its verdict to a proper form. See Tex. Code Crim. Proc. art. 37.10(a). Applying that article to this case, I would uphold the court of appeals's judgments affirming the trial court's judgments that sentenced Reginald Nixon, appellant, to

the prison terms assessed by the jury in its subsequent verdicts that were reached after the trial judge rejected its original verdicts. See Nixon v. State, Nos. 07–13–00389–CR, 07–13–00390–CR, 2014 WL 2553372, at *2 (Tex.App.–Amarillo June 4, 2014, pet. granted). This Court's decision to disregard the subsequent verdicts and to reform appellant's sentences to the lower prison terms in the original verdicts, which are half of what the jury actually intended, is a windfall for appellant that is not required under the law. I, therefore, respectfully dissent from this Court's judgments.

The facts in this case are not in dispute. During punishment deliberations, the jury asked the trial court whether the two sentences that it would be imposing would run concurrently or consecutively. The judge declined to answer that question, instead instructing the jury to continue deliberating by applying the law that it had previously been given. After that, the jury filled out verdict forms indicating that appellant was to be sentenced to a prison term of seven years for evading arrest and another prison term of nine years for burglary of a habitation, but it also qualified those verdicts by indicating with an asterisk that the sentences were to run consecutively. The trial court, however, could not order the sentences to run consecutively because the Texas Penal Code required that they run concurrently. See Tex. Penal Code § 3.03(a). The trial court rejected the jury's original verdicts, it instructed the jury that any sentences would run concurrently as a matter of law, and it told the jury to continue its deliberations. The

---

**48.** *Contra post,* at 573 (Yeary, J., dissenting) (suggesting a different interpretation to give trial courts greater flexibility in handling verdict "anomalies").

**49.** Tex. Code Crim. Proc. art. 37.10(b) ("If the trial court is required to reform a verdict

under this subsection and fails to do so, the appellate court shall reform the verdict as provided by this subsection.").

**50.** *See* Tex. R. App. P. 78.1(b).

**51.** *See* Tex. Penal Code § 3.03(a).

jury then subsequently returned verdict forms sentencing appellant to sixteen years for each offense.

In rejecting the jury's original verdicts and instructing it to continue deliberating, I conclude that the trial court acted within the authority of Code of Criminal Procedure Article 37.10(a), which states,

> If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant.

See TEX. CODE CRIM. PROC. art. 37.10(a). This Court's precedent is instructive in explaining the meaning of Article 37.10(a). See id. This Court has observed that an informal verdict is one that "does not meet the legal requirements of being ... answered as authorized." See Jennings v. State, 302 S.W.3d 306, 309 (Tex.Crim.App. 2010). Article 37.10(a), this Court has explained, "sets out the method to repair [such a verdict's] informality." Id. To meet its legal requirements, a verdict should be unambiguous with respect to the jury's intent. See Reese v. State, 773 S.W.2d 314, 317 (Tex.Crim.App.1989). This Court has stated,

> A verdict must be certain, consistent, and definite. It may not be conditional, qualified, speculative, inconclusive, or ambiguous. An incomplete or unresponsive verdict should not be received by the court. It is not only within the power, but it is the duty of the trial judge, to reject an informal or insufficient verdict, call to the attention of the jury the informality or insufficiency, and have the same corrected with their con-

sent, or send them out again to consider their verdict.

Id. (citations omitted). Here, because the jury's verdicts contained surplusage that called into question the jury's intent, the trial-court judge could have reasonably concluded that the initial verdicts were ambiguous, and, on that basis, the court acted within its authority by sending the jury out to clarify its verdicts.

Not only must a trial court reject a verdict that is so ambiguous that the jury's intent cannot be fairly ascertained, but the trial court's instructions to the jury on which it relies to reach a verdict should inform it about the applicable law. Here, the trial court could properly have provided the applicable law that the sentences in these cases would run concurrently. See TEX. PENAL CODE § 3.03(a); Gordon v. State, 633 S.W.2d 872, 879 (Tex.Crim.App. 1982) (holding that the trial court's truthful answer to the jury's question inquiring whether the sentences would run consecutively or concurrently was not improper); Haliburton v. State, 578 S.W.2d 726, 729 (Tex.Crim.App.1979) (same, and reasoning that the trial court's supplemental charge informing the jury that defendant's sentences would run concurrently was "a proper matter for jury consideration"). In Haliburton, this Court explained the rationale underlying its holding as follows:

> The policy of the law should require juries to make informed and intelligent decisions based on every piece of information legally available. [To disallow the trial court's response regarding concurrent sentences] would exclude information from the jury hoping that in their ignorance the jury would return a less severe punishment. Such a result is not supported by law or logic.

Haliburton, 578 S.W.2d at 729.

Because the trial court could properly have informed the jury that the law re-

quired concurrent sentences in this case and it had neglected to inform the jury as to that law even after the jury sent a question asking about it, the jury was unaware of whether the sentences would run consecutively or concurrently and of whether it or the trial court would decide the matter of consecutive or concurrent sentencing. It would have been rational for the jury to believe, therefore, that the matter of whether the sentences would run concurrently or consecutively was within its power to decide. Under these circumstances, I conclude that the jury's asterisk reflects that the jury was attempting to communicate its desire to sentence appellant to sixteen years in prison for each of the two offenses if the sentences were to run concurrently and seven and nine years in prison for each of the offenses if the sentences were to run consecutively.[1] Thus, I conclude that the original verdicts did not meet the legal requirements for verdicts because they were not "certain" or "definite," in the sense that they were "conditional" upon the sentences running consecutively. *See Reese*, 773 S.W.2d at 317. Because of the ambiguity in the jury's original verdicts, the court of appeals properly held that the trial court was authorized to reject those verdicts and to order the jury to continue deliberating until it reached proper subsequent verdicts in light of the applicable law. *See* TEX. CODE CRIM. PROC. art. 37.10(a).

Nothing about these facts suggests that the jury's original verdicts were an attempt to formally assess punishment that was not authorized by law for the offenses. I, therefore, disagree that the outcome of this case is controlled by Article 37.10(b), which applies when a jury returns a verdict that assesses a punishment not authorized by law. *See* TEX. CODE CRIM. PROC. art. 37.10(b). Thus, this situation is unlike one in which the jury has formally assessed an unauthorized punishment, such as imposing a jail term that exceeds the statutory maximum. *See Vance v. State*, 970 S.W.2d 130, 132 (Tex.App.–Dallas 1998, no pet.) (affirming trial court's reformation, following motion for new trial, of defendant's jail sentence from 730 days to 365 days, where 365 days was maximum allowed by statute and jury charge had erroneously instructed jury that it could impose sentence of 730 days).

I would uphold the jury's subsequent verdicts in this case that set appellant's punishment at sixteen years in prison for each offense. I would not reform appellant's punishment to the lower prison terms of seven years and nine years in prison, respectively. Because this Court's holding results in a windfall to appellant that is unnecessary under our laws, I respectfully dissent.

YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.

The import of the Court's holding today distills down to one sentence excerpted from its opinion:

> Because the jury's handwritten additions to the verdict form were clearly intended to control how the nine- and seven-year terms of confinement were to be served—in essence, insuring [Appellant] would be incarcerated for sixteen years—the jury intended that the cumulation serve a punitive purpose, and those additions should be considered punishment.

Majority Opinion at 569. It is not clear to me, however, that the meaning of the word

---

1. In any event, even if consecutive sentences had been permissible in this case, the matter of whether sentences are to run concurrently or consecutively is one for a trial judge rather than a jury. *See* TEX. CODE CRIM. PROC. art. 42.08 (vesting in trial court authority to order concurrent or consecutive sentences).

"punishment" in Article 37.10(b) is best determined by deferring to what the jury thought it was accomplishing by its conditional approach to sentencing in this case. Just because a jury has attempted to usurp a function institutionally assigned to the trial court during the punishment phase of trial, it does not mean that it has necessarily "assesse[d] ... punishment that is not authorized by law for the offense," for purposes of construing this mandatory statute. To read the statutory mandate so sweepingly deprives trial courts of desirable flexibility in handling the potential variety of anomalies that may crop up from time to time in jury verdicts. I would hold, instead, that the jury's purported punishment verdict in this case was an "informal" one that triggered the application of Subsection (a) of Article 37.10, not Subsection (b). However, because the trial court failed to adhere to the requirements of Article 37.10(a), I would remand the cause to the court of appeals for further consideration. Instead, the Court reforms the judgment to reflect concurrent seven- and nine-year sentences. I respectfully dissent.

The word "punishment" appears no fewer than five times in the first sentence of Article 37.10(b):

If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law.

TEX. CODE CRIM. PROC. art. 37.10(b). The Court holds today that if the jury's penalty phase verdict in any way seems to "serve a punitive purpose" beyond what is expressly authorized (presumably under Chapter 12 of the Penal Code), then it has "assessed" an unauthorized "punishment," and the trial court's response must be governed by Article 34.10(b). Such a construction of the statute is neither compelled nor, in my view, appropriate.

The decision whether multiple sentences should be made to run concurrently or consecutively does not constitute an "assess[ment]" of "punishment." It is more in the nature of an unavoidable administrative determination with respect to how "punishments" that have already been "assesse[d]"—by whichever entity, judge or jury—shall be imposed.[1] The decision to cumulate sentences is certainly not re-

---

1. I say "unavoidable" because, as long as trial courts have discretion whether to impose sentences concurrently or consecutively, that decision must be made by some entity at some point. Early on, trial courts in Texas were actually *required* by statute to cumulate separate sentences; they had no discretion to do otherwise. *See, e.g., Smith v. State,* 34 Tex. Crim. 123, 123–24, 29 S.W. 774, 775 (1895) ("Nor is there anything in the alleged error of the court making the sentence in this case cumulative of that pronounced against appellant in a preceding conviction. This action of the court is expressly enjoined by statute, and therefore the court did not err in this respect. Code Cr. Proc. [Article] 800 [1879]."); *Culwell v. State,* 70 Tex.Crim. 596, 598, 157 S.W. 765, 766 (1913) (quoting Article 862 of the

1911 Code of Criminal Procedure, which was identical to former Article 800). The Legislature revised the statute in 1919, however, to authorize trial courts to impose either consecutive or concurrent sentences, at their untethered discretion. Acts 1919, 36th Leg., ch. 20, § 1, p. 25, approved Feb. 19, 1919 (amending Article 862 of the 1911 Code of Criminal Procedure). *See, e.g., Carney v. State,* 573 S.W.2d 24, 27 (Tex.Crim.App.1978) ("There is no 'right' to a concurrent sentence; whether punishment will run concurrently or cumulatively is within the discretion of the trial judge."). That provision may presently be found in Article 42.08(a) of the Code of Criminal Procedure, and it is echoed in Section 3.04(b) of the Penal Code. TEX. CODE CRIM. PROC. art. 42.08(a); TEX. PENAL CODE § 3.04(b).

garded as an "increase" in the "maximum punishment authorized for a particular offense" to which a defendant may find himself susceptible. *See Oregon v. Ice,* 555 U.S. 160, 163, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009) (the Sixth Amendment does not prohibit a state from assigning fact finding that determines whether multiple sentences are to run concurrently or consecutively to the trial judge rather than to the jury). The "punishment" that has been "assess[ed]" remains the same: a separate term of confinement in the penitentiary, of definite duration, for each discrete offense. In my view, a jury's punishment verdict that goes on to attempt to usurp the trial court's function to decide *how* to carry out the definite "punishment[s]" it has "assess[ed]" does not amount to the "assess[ment]" of additional "punishment" so

Thus, trial judges in Texas have had the authority to *cumulate* sentences from the beginning; and, since 1919, they have also had the authority to order separate sentences to run *concurrently.*

2. I wonder whether the Court's holding today—that cumulation of sentences constitutes an additional "assess[ment]" of "punishment" (albeit punishment that the *jury* is not "unauthorized" to mete it out)—might undermine our earlier pronouncement in *Barrow v. State,* 207 S.W.3d 377 (Tex.Crim.App.2006), that the Sixth Amendment right to a jury trial is not implicated? I would think the Court would prefer to construe Article 37.10 in a way that avoids that constitutional can of worms.

3. *See Berghahn v. State,* 683 S.W.2d 697, 699 (Tex.Crim.App.1984) (Clinton, J., dissenting on original submission) (observing that "[o]ur present code of criminal procedure provides, and probably all its predecessors did as well, that a verdict is 'a written declaration by a jury of its decision of the issue submitted to it …'"). Indeed, going back at least as far as the 1879 Code of Criminal Procedure, former Article 705 provided that "[a] verdict is a declaration by a jury of their decision of the issues submitted to them in the case, and it must be in writing and concurred in by each member of the jury."

as to trigger Article 37.10(b).[2] The Court cites nothing to the contrary.

I would construe the jury's conditional penalty phase verdict in this case to be "informal," in the sense that it strayed from the "formal" verdict form the trial court gave it at the conclusion of the jury charge. "A 'verdict' is a written declaration by a jury of its decision of the issue submitted to it in the case." TEX. CODE CRIM. PROC. art. 37.01.[3] In our modern universal practice, a "formal" verdict is typically the written form submitted to the jury at the end of the jury charge, to be filled in as appropriate in keeping with the jury's "decision." The present Code provision governing "informal" verdicts, like the definition of "verdict" itself, goes back to the earliest criminal codes in Texas.[4] Of the various dictionary definitions

4. The 1879 Code, echoing the so-called "Old Code" of 1856, broke the statutory proscription into two segments, Articles 715 and 716. These read:

ART. 715. If the jury find a verdict which is informal their attention shall be called to it, and, with their consent, the verdict may, under the direction of the court, be reduced to proper form.

ART. 716. If the jury refuse to have the verdict altered they shall again retire to their room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal, and in that case the judgment shall be rendered accordingly, discharging the defendant.

Every succeeding code of criminal procedure up to the present time carried this provision forward, with minor, non-substantive amendments. Article 37.10(a) presently reads:

(a) If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant.

of the word "informal," the one that seems to me to be the most natural fit, in the context of the evident purpose of Article 37.10(a), is as follows: "Not done or made according to a recognized or prescribed form; not observing forms; not according to order; irregular; unofficial, disorderly." 1 THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY: COMPLETE TEXT RE-PRODUCED MICROGRAPHICALLY, at 1432 (Oxford University Press 1971). *Black's* definition is similar: "Not done or performed in accordance with normal forms or procedures." BLACK'S LAW DICTIONARY, at 898 (10th ed.2014). A jury verdict at the punishment phase of trial that fills in the blanks on the supplied form as appropriate, but then drops a footnote to indicate that the jury's "decision" as so indicated is a qualified one—contingent on some fact or circumstance over which the jury has no interest or control—strikes me as the quintessential "informal" verdict according to these dictionary definitions.[5]

This is not to say that it would necessarily have been inappropriate for the trial court simply to accept the punishments that the jury originally assessed—seven years' confinement for the burglary offense and nine years' confinement for the evading arrest offense—as the Court does

today. But it could not do so, under the express terms of Article 37.10(a), without first obtaining the consent of the jurors. Only if the jury had refused to relinquish its footnoted qualification upon its assessment of the punishments for the respective offenses would it have been appropriate for the trial court to "again retire [it] to its room to deliberate" further. TEX. CODE CRIM. PROC. art. 37.10(a). Had the jury, upon inquiry, explicitly consented to the seven- and nine-year sentences and withdrawn its attempted qualification, I would agree that the Court's ultimate disposition today would be the correct one.

Thus, while I agree that the record demonstrates that the trial court committed error, the error was in failing to follow the dictates of Section (a) of Article 37.10, not Section (b). How would I dispose of the case in light of this error? I would remand the cause to the court of appeals to address four remaining issues in the first instance—or at least as many of these four issues as it should find necessary to dispose of the case. First and second, was the trial judge's error—specifically, failing to adhere to Article 37.10(a)'s requirement that he seek the jury's consent to abandon its qualification of its punishment verdict before returning it to deliberate—subject

---

TEX. CODE CRIM. PROC. art. 37.10(a).

**5.** Prior case law defines "informal" consistently with these dictionary definitions. "A verdict ... may not be conditional, qualified, speculative, inconclusive, or ambiguous." *Eads v. State*, 598 S.W.2d 304, 306 (Tex.Crim. App.1980). When a jury verdict is "conditional" or "qualified," we have applied what is now Article 37.10(a) to hold that "it is the duty of the trial judge to reject [it as] an informal or insufficient verdict, call to the attention of the jury the defect, informality or insufficiency, and either have the same corrected with their consent, or retire them again to consider of their verdict." *Id.* It is true that *Eads* preceded the addition of Arti-

cle 37.10(b). And when a jury verdict unambiguously, unconditionally, and unqualifiedly purports to assess a punishment that the jury has no power to impose, Section (b) ought now to apply. Here, however, the jury assessed punishments that were wholly within its power—but then qualified these assessments. At the time at which the jury first returned this conditional, quintessentially "informal" verdict, the trial court could not have known whether, absent that attempted qualification, the jury would necessarily have assessed different punishments within the prescribed range. It should have followed the dictates of Article 37.10(a) to address this informality.

to ordinary principles of error preservation, and if so, were Appellant's complaints at trial sufficient to preserve the error under Rule 33.1 of the Texas Rules of Appellate Procedure?[6] Tex. R. App. P. 33.1. Third and fourth, was the error subject to a harm analysis, and if so, does the record reveal that the error is reversible under the appropriate provision of Rule 44.2 of the Texas Rules of Appellate Procedure? Tex. R. App. P. 44.2. I offer no opinion how any of these issues ought to be resolved and would urge the court of appeals to accept additional briefing from the parties, at its discretion.

Because the Court does not remand the cause for these additional inquiries, but persists instead in finding error under Article 37.10(b), and then correcting that error itself by reforming the judgments, I respectfully dissent.

---

**6.** An appellate court may not reverse a conviction without first addressing any issue of error preservation that might be presented by the record. *Gipson v. State,* 383 S.W.3d 152, 159 (Tex.Crim.App.2012). When first asked how he would have the trial court respond to the jury's conditional verdict, Appellant requested the trial court to "instruct *them* to strike the surplusage on their verdict and return it in *proper form.*" (Emphasis added.) He did not ask the trial court to simply reform the verdict on its own, under the terms of Article 37.10(b). Rather, his request for the trial court to have the *jury* return a verdict in the *"proper form"* more closely resembles the procedure spelled out in Article 37.10(a)— except that it would have had the trial court skip the first step of asking the jury for its *consent* to reduce the verdict "to the proper form." Later, the Appellant simply asked for a mistrial. But he ultimately "implore[d] the Court to accept the original verdict as presented in *proper form.*" (Emphasis added.) Again, however, he failed to suggest that the trial court first obtain the jury's consent. Whether this should be found to amount to a procedural default is a question I would leave to the court of appeals to resolve in the first instance.